## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WESLEY THOMAS GRACE,**

        **Petitioner,**

**v.**                                                    **Case No. 8:21-cv-621-MSS-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

        **Respondent.**

_____/

### O R D E R

Grace petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for armed burglary with assault or battery, aggravated assault, and tampering with a witness. (Doc. 1 at 1) After reviewing the petition (Doc. 1), the response (Doc. 5), and the relevant state court record (Doc. 5-1), the Court **DENIES** the petition.

### PROCEDURAL HISTORY

A jury found Grace guilty of armed burglary of a dwelling with assault, two counts of aggravated assault, and tampering with a witness. (Doc. 5-2 at 323–25) The trial court sentenced Grace as a prison releasee reoffender to life in prison for the burglary conviction, a concurrent thirty years for the tampering conviction, and concurrent five years for the aggravated assault convictions. (Doc. 5-2 at 364–67) Grace appealed, and the state appellate court affirmed. (Doc. 5-2 at 371) Grace moved for post-conviction relief (Doc. 5-2 at 429–40), the post-conviction court denied relief (Doc. 5-2 at 516–17), and the state appellate court affirmed. (Doc. 5-2 at 579) Grace's federal petition follows.

1

## FACTS

On June 12, 2016, at 2:00 P.M., Grace knocked on the front door of the home belonging to James and Michelle Young. (Doc. 5-2 at 165–66) James answered and observed Grace dressed in black clothing and wearing a motorcycle helmet and flip-flops. (Doc. 5-2 at 166–67, 185) Grace told James, "I want my sh*t," and James responded that Grace came to the wrong house. (Doc. 5-2 at 168) Grace clarified that he wanted his four-wheeler and believed that James hid the four-wheeler in a shed in the backyard. (Doc. 5-2 at 168–69) James walked outside and showed Grace that the shed in the backyard was too small to store a four-wheeler. (Doc. 5-2 at 169) When Grace told James that he planned to go into the backyard, James warned Grace that his two bulldogs would bite Grace. (Doc. 5-2 at 170) After Grace replied that he would kill the dogs, James became upset, returned inside, and told Michelle to call the police. (Doc. 5-2 at 170)

Grace followed James through the front door. (Doc. 5-2 at 170–71) James told Grace to leave, Michelle who was inside pushed Grace, and Grace brandished a knife. (Doc. 5-2 at 171–72, 187) Grace swung the knife near James's face and caused James to fall to the ground. (Doc. 5-2 at 172, 186–87) James repeatedly told Michelle to call the police, and Grace knocked the telephone out of Michelle's hands. (Doc. 5-2 at 173, 186–88) Michelle grabbed the telephone from the floor, and Grace brandished the knife in her face and threatened, "Don't make me motherf*cking kill you." (Doc. 5-2 at 188–89) James and Michelle ran out to the backyard. (Doc. 5-2 at 174, 189) Grace followed, and the bulldogs attacked Grace. (Doc. 5-2 at 174, 190) Grace returned inside, locked the back door, tapped his knife on the window, threatened to "cut" James, and left through the front door. (Doc. 5-2 at 174–75)

That afternoon, a neighbor, who had known Grace for about ten years, unexpectedly saw Grace dressed in black clothing and wearing a motorcycle helmet and flip-flops. (Doc. 5-2 at 199–200, 205) Grace asked the neighbor to drive him to Auburndale. (Doc. 5-2 at 201) During the car ride, Grace told the neighbor that he had confronted a person who had stolen his four-wheeler and had tried to enter the person's backyard, but the person did not allow him to enter. (Doc. 5-2 at 201–03)

Two weeks later, a detective interrogated Grace about the burglary. (Doc. 5-2 at 153) After waiving his constitutional rights, Grace told the detective that he did not know anything about the burglary and denied knowing the neighbor. (Doc. 5-2 at 157) The detective showed James and Michelle a photographic lineup that contained a photograph of Grace. (Doc. 5-2 at 158–59) The detective testified that neither James nor Michelle could identify a suspect. (Doc. 5-2 at 159, 254) Both James and Michelle testified that they did identify Grace in the photographic lineup, and both identified Grace in court as the burglar. (Doc. 5-2 at 176, 178, 191–92, 195) Michelle testified that, after identifying Grace in the photographic lineup, she and James learned Grace's name and "looked him up, [ ] to see who he was, and [they] knew that's who it was." (Doc. 5-2 at 194)

## STANDARDS OF REVIEW

### AEDPA

Because Grace filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim —

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Grace asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

In a decision without a written opinion, the state appellate court affirmed the order denying Grace post-conviction relief. (Doc. 5-2 at 579) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Because the post-conviction court provided reasons for denying Grace's claims in a written order (Doc. 5-2 at 516–17), this Court evaluates those reasons under Section 2254(d).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*

*v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally defaulted. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Also, "a state court's rejection of a federal constitutional claim on procedural grounds will [ ] preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Coleman*, 501 U.S. at 729–30).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

**Ground One**

Grace asserts that trial counsel deficiently performed by failing to present at trial testimony by Deputy Jacob Durrance. (Doc. 1 at 3–4) Grace contends that the deputy would have testified that James Young told the deputy that he invited Grace into the home. (Doc. 1 at 4) The post-conviction court denied the claim as follows (Doc. 5-2 at 516):

> Defendant argues that trial counsel was ineffective for failing to investigate Deputy Durrance. The State responds that Deputy Durrance was a known witness and was set for deposition. The

State further argues that Defendant has not identified how the conversation between Mr. Young and Deputy Durrance was known to Defendant and has included no attachment. The State also argues that the testimony would not have changed the outcome at trial as Mr. Young testified that he repeatedly tried to push Defendant out of his residence and permission to enter, if it had been given originally, would have been revoked when Defendant brandished a knife. . . . After review of the State's arguments, citations, and attachments to its Response, adopted and incorporated herein, the Court agrees.

The prosecutor presented the following argument in the response to Grace's motion

for post-conviction relief (Doc. 5-2 at 464–70) (state court record citations omitted):

Defendant's first assignment of error is that trial counsel performed deficiently within *Strickland* by failing to investigate and call Deputy Durrance as a witness. In Defendant's amended motion for post-conviction relief, Defendant states explicitly that had Deputy Jacob B. Durrance been called to testify on Defendant's behalf, he would have testified that Mr. Young told the deputy that he gave Defendant permission to enter the house. Both the record and Defendant's own motion refutes this claim as to both performance and prejudice. Defendant's claim should be denied without a hearing.

Deputy Jacob Durrance was not called to testify at the trial. He is mentioned in a Notice of Taking Deposition filed by Assistant Public Defender Candice Zeigler as a scheduled deponent on October 5, 2016. Defendant states that potential witness Durrance was listed as a Category A witness. Thus, between the court file and Defendant's own motion, Deputy Durrance was known to defense counsel and set for deposition. This is hardly the lack of investigation that Defendant suggests in his motion. Obviously, trial counsel cannot be deficient if prior appointed counsel conducted a deposition of this witness and Defendant states no reason why trial counsel should have filed a motion to depose Deputy Durrance a second time.

Further, Defendant states that "[d]uring an initial sworn and recorded interview James Young unequivocally states to Deputy Jacob B. Durrance that permission to enter the building was given to the defendant." Defendant makes this claim without any attachment to his motion.[3] The Court is unable to consider whether this is based on a transcript of a recorded interview (as Defendant claims), a deposition transcript, a

police report, or if Defendant somehow had personal knowledge of a conversation between two complete strangers. For his claim to support the idea that trial counsel failed to investigate a witness's potential testimony, Defendant should not be allowed to swear as true something without an attachment or explain how he personally knows it to be accurate information. Defendant makes no citation and includes no attachment to suggest that James Young ever made this statement (the complete opposite of his trial testimony) or that Deputy Durrance ever heard this statement.

> [3] Defendant filed a Third Amended Motion for Post-conviction Relief and Motion to Strike Motion which was sent on October 18, 2019. This Third Amended Motion includes an "Attachment A" which appears to be an attached police report from Jacob Durrance[.] [H]owever, the scanned copy in the Court file is illegible.

Essentially, without this information, Defendant has not put forth a good faith claim, and the motion should be considered to be insufficient. For the same reasons that a motion filed under Fla. R. Crim. P. 3.850 must be sworn to, the motion must also provide the State and the Court notice of how the claim would be substantiated. In its original order dismissing Defendant's Motion for Post-conviction Relief, the Court allowed Defendant an extra sixty days to submit a facially sufficient motion. Without the appropriate attachment, Defendant has not yet filed a sufficient motion. Once the defendant has been given the opportunity to amend a facially insufficient claim, the final order on the motion is a disposition on the merits of all claims, even if the defendant's attempt to amend the claim results in another insufficiently pleaded ground for relief. *Verity v. State*, 56 So. 3d 77, 78 (Fla. 2d DCA 2011) (quoting *Lawrence v. State*, 987 So. 2d 157, 159 (Fla. 2d DCA 2008)).

"[A] Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes [ ] a ruling 'on the merits' that is not barred from [federal habeas] review." *Pope v. Sec'y, Dep't Corrs.*, 680 F.3d 1271, 1286 (11th Cir. 2012). *Daniel v. Comm'r, Ala. Dep't Corrs.*, 822 F.3d 1248, 1260 (11th Cir. 2016) ("Summary dismissals [ ] are adjudications on the merits and subject to AEDPA review.").

In the post-conviction motion, Grace contended that Deputy Durrance would have testified that, during an interview, James stated that he gave Grace permission to enter the home. (Doc. 5-2 at 432) "[*Strickland*'s prejudice] burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.'" *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). "[F]or that reason, [the Eleventh Circuit has] held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver*, 991 F.3d at 1365.

Grace attached a police report to his post-conviction motion to demonstrate that Deputy Durrance would testify in the manner that he contended. The post-conviction court adopted the prosecutor's response, which stated that the copy of the police report in the state court clerk's file was illegible. (Doc. 5-2 at 465 n.3) This Court takes judicial notice of the state court clerk's file and determines that the copy of the police report is not illegible.[1] The police report states the following facts (bolding added):

> On June 12, 2016, I responded to 116 Temple Street, Winter Haven, in reference to an alleged burglary that had just occurred. Sergeant Daniel #5185 was the first unit on scene and I soon arrived as second. I met with James Young, Sr., and Michelle Young (victims) at the intersection of Thornhill Road and Temple Street. Sergeant Daniel directed me to complete a second interview with them in regards to the incident. I spoke with James first who advised me an unknown male subject came to his residence and knocked on the front door. James opened the door and asked what the subject wanted. James

---

[1] *See* Motion to Strike Prior Amended Motion and Amended Motion for Post-Conviction Relief, *State v. Grace*, No. 16-CF-5202 (Fla. 10th Jud. Cir. Oct. 24, 2019), *available at* https://pro.polkcountyclerk.net/PRO.

noted the male was white, tall, wore a black motorcycle helmet, and had scruffy facial hair. James did not recognize the subject. James told me the subject was yelling and stated he wanted his four-wheeler back. James told the subject he didn't know what he was talking about. The subject told James he wanted to look in the backyard for the four-wheeler.

**James told me he opened up the front door and led the subject through the house to the back door. I specifically asked James if he allowed the subject inside of the home or if the subject forced his way inside. James again stated he allowed the subject inside.** James told the subject he needed to put his dog away. James told me the subject the pulled a large knife from his waistband and stated he would kill the dog. James advised me he then told the subject to leave or he would call the police. James advised me that the subject then threatened to kill him and James yelled at Michelle to call for the police. Michelle got her cell phone to call law enforcement but the subject hit the phone out of her hands before fleeing the residence. I then asked questions relative to where the subject fled in order to assist K9 Deputy Billo with his track. I did not conduct a detailed interview with Michelle.

I then assisted K9 Deputy Billo with a track for the suspect. I did not complete any further interviews or collect any evidence. I had no further involvement in this case.

The post-conviction court unreasonably determined that the copy of the police report in the state court clerk's file was illegible. 28 U.S.C. § 2254(d)(2). Consequently, this Court must review the claim *de novo*. *Cooper v. Sec'y, Dep't Corrs.*, 646 F.3d 1328, 1353 (11th Cir. 2011) ("'[W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.'").

Even under *de novo* review, Grace's claim fails. At trial, James testified that he walked Grace to the side of the home to show him that the four-wheeler was not parked in the backyard. (Doc. 5-2 at 169) Even if trial counsel called Deputy Durrance to testify that

James told him that James invited Grace inside the home to show him that the four-wheeler was not parked in the backyard, that prior inconsistent statement only impeaches James and is not admissible for the truth of the matter asserted. § 90.608(1), Fla. Stat. *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) ("The theory of admissibility is not that the prior statement is true and the in-court testimony is false, but that because the witness has not told the truth in one of the statements, the jury should disbelieve both statements.").

Even if the statement is admissible for the truth of the matter asserted, the statement does not exculpate Grace. Even if James initially invited Grace inside the home, James revoked the invitation after Grace brandished the knife and threatened to kill the dogs. Because Grace brandished the knife in James's and Michelle's faces and threatened to kill them both after James revoked the invitation, Grace committed a burglary with an assault, despite the claimed initial invitation to enter the home. § 810.02(1)(b)(2)(b), Fla. Stat. (2016) ("For offenses committed after July 1, 2001, 'burglary' means . . . [n]otwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance [a]fter permission to remain therein has been withdrawn, with the intent to commit an offense therein . . . ."). *State v. Herron*, 70 So. 3d 705, 707 (Fla. 4th DCA 2011) ("[T]here is sufficient evidence for a reasonable jury to find that Herron remained within Gonzalez's apartment with the intent to commit a battery. When entrance is licensed or invited, and such license or invitation is proved, 'a remaining in burglary' may have occurred if permission to remain in the dwelling was revoked.").

Because James's prior statement to the deputy does not exculpate Grace, trial counsel did not deficiently perform by failing to call the deputy to testify, and Grace fails to

demonstrate a reasonable probability that the outcome at trial would have changed. Consequently, the claim is meritless. *Sullivan*, 459 F.3d at 1109–11.

Ground One is **DENIED**.

**Ground Two**

Grace asserts that trial counsel deficiently performed by not objecting to comments by the trial judge during voir dire that demonstrate that the trial judge departed from his role as a neutral arbiter. He admits that he did not exhaust his remedies in state court but asserts that *Martinez v. Ryan*, 566 U.S. 1 (2012), permits federal review of the procedurally defaulted claim. (Doc. 1 at 10)

Under *Martinez*, 566 U.S. at 14, Grace must demonstrate (1) that either the post-conviction court failed to appoint counsel or appointed counsel deficiently performed by not raising the claim and (2) the claim is substantial or has "some merit." Because Grace fails to meet his heavy burden under Section 2254(e)(2)[2] to excuse his failure to develop the factual basis of the claim in state court, this Court "may not conduct an evidentiary hearing

---

[2] If a petitioner fails to develop the factual basis of a claim in state court, Section 2254(e)(2) bars a federal habeas court from holding an evidentiary hearing unless the petitioner demonstrates that:

  (A)   the claim relies on —

    (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

  (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

or otherwise consider evidence beyond the state-court record based on ineffective assistance of state post-conviction counsel." *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022). Grace must demonstrate deficient performance and prejudice under *Strickland* based on the state court record. *Shinn*, 596 U.S. at 382.

Because the post-conviction court did not appoint Grace counsel (Doc. 5-2 at 516–17), Grace must demonstrate cause under *Martinez*. However, Grace fails to demonstrate prejudice or that the claim has "some merit." *Martinez*, 566 U.S. at 14.

During voir dire, trial counsel asked potential jurors whether the prosecutor must introduce evidence of a weapon to prove guilt, and the trial judge interrupted for a sidebar conference (Doc. 5-2 at 84–88):

| | |
|---|---|
| [Trial counsel:] | Did you hear what Mr. [L.] just said? What about the weapon? It could be a knife or weapon? Does anyone agree with that? I mean, a part of the charges is a weapon. Do we have the weapon? Is that relevant, Mr. — Mr. [T.]? |
| [Juror T.:] | Yeah, that would be relevant. |
| [Trial counsel:] | Okay. What about if they don't have the weapon? Maybe you have a witness that testified that there was a weapon that they were holding in their hand. Is that just as good? Ms. — Ms. [R.]? |
| [Juror R.:] | Well, I would feel that if — like, if they say that, then, you know that they had the weapon, at least have proof, or, you know — you caught me off guard. |
| [Trial counsel:] | Sorry. |
| [Juror R.:] | You're all right. At least have it in evidence, have the weapon in evidence. If not, then it would kind of make my opinion different towards that. |

14

| | |
|---|---|
| [Trial counsel:] | Okay. That's great. Anyone else — |
| [Trial court:] | Hold on. Let me interrupt. Can I see everybody? |
| | [Sidebar conference] |
| [Trial court:] | The defendant is present before the Court with counsel at a sidebar conference. Do you know why I called us over here? |
| [Trial counsel:] | Yes. |
| [Trial court:] | Why? |
| [Trial counsel:] | Because I went too far into the evidence and into the case itself. |
| [Trial court:] | Yes. It's really not appropriate to ask jurors what it will take to convict or acquit. That's too specific. You can ask about categories of evidence. For example, "This case involves a knife. How do you feel about a knife being alleged? Maybe you can't be fair because it involves a knife." But to ask them — to ask them, "Well, if there was no knife, you know, what are you going to do with that?" is really — |
| [Trial counsel:] | Okay. |
| [Trial court:] | You need to rephrase your questioning. |
| [Trial counsel:] | Can I just try to — let me state this on a run-through before I go back out there, of how I'm going to rephrase it. |
| [Trial court:] | You can tie it in with evidence, lack of evidence, conflict in the evidence. |
| [Trial counsel:] | So pretty much I would ask, you know, would that be — you know, whether they had a knife or not, would that be |

|  |  |
|---|---|
|  | considered lack of evidence or a conflict of evidence? |
| [Trial court:] | Well, you can ask them to look at the overall facts, but you can't ask them to commit — |
| [Trial counsel:] | Right. |
| [Trial court:] | — to whether they're going to reach one result or another, whether or not there was a knife recovered. |
| [Trial counsel:] | Okay. |
| [Trial court:] | You see, I don't know the facts of your case, but you can't — |
| [Trial counsel:] | All right. |
| [Trial court:] | You are going too far with that. |
| [Trial counsel:] | Yes, sir. |
| [Trial court:] | And you're doing it kind of the wrong way, so for that reason — |
| [Trial counsel:] | Well, I don't think — |
| [Trial court:] | Because, obviously, these people are responding — they don't know how to answer your question, because they don't know what the facts are. |
| [Trial counsel:] | Right. I don't really want them to answer my question. I was just trying to get a generalization on how they were thinking. But I understand what you are saying. |
| [Trial court:] | I'm not saying you can't ask about that as a category, just rephrase it. |
| [Trial counsel:] | Okay. |
| [Trial court:] | State, anything else? |

| [Prosecutor:] | No, Your Honor. |
|---|---|
| [Trial counsel:] | I think I'm going to close it. |
| [Trial court:] | No. No. No. Do not take that as my suggesting in any way. |
| [Trial counsel:] | I know, but I don't want to mess it up, because I don't want a mistrial or anything. |
| [Trial court:] | Well, you keep at it, just rephrase. |

Grace contends that the trial judge departed from his role as a neutral arbiter because the prosecutor did not object to trial counsel's questions during voir dire, and the trial judge instead interjected and *sua sponte* raised the issue. (Doc. 1 at 9–10) He further contends that, if trial counsel had objected, the trial court would have permitted trial counsel to further question Juror T. and Juror R., and trial counsel would have demonstrated that Juror T. and Juror R. could not serve as jurors because of bias and an inability to follow the law. (Doc. 1 at 9–10)

*Williams v. State*, 689 So. 2d 393, 396 (Fla. 3d DCA 1997), holds that a trial judge may interject when an attorney improperly comments or questions a juror during voir dire:

> [I]t is within the province of the court to interject itself, without objection, albeit rarely, into voir dire examination concerning counsel's questions or comments. *Brown v. State*, 678 So. 2d 910, 913 (Fla. 4th DCA 1996). *See Oglesby v. State*, 23 So. 2d 558, 559 (Fla. 1945). The record in this case reveals that the court *sua sponte* objected to a comment and a question by defense counsel to the prospective jurors during voir dire. Those actions, without more, do not demonstrate that the court departed from its proper position of neutrality, where, as here, the court properly exercised its authority without harshness or repeated interjections. *See Jackson v. State*, 545 So. 2d 260, 264 (Fla. 1989); *Pope v. Wainwright*, 496 So. 2d at 802, and cited cases. *See generally Williams v. State*, 143 So. 2d 484, 488 (Fla. 1962).

The trial judge was within his authority to address trial counsel's improper questioning of the jurors about anticipated evidence in the case. *Thomany v. State*, 252 So. 3d 256, 257 (Fla. 4th DCA 2018) ("[I]t appears counsel's questions primarily were intended to plant seeds in the jury's mind about the defendant's theory of the case, to be argued later during trial. Such 'pre-trying' of the case is not the purpose of voir dire, nor is it an appropriate use of the amount of time provided for voir dire."). Moreover, the trial court did so outside the presence of the venire.

Also, the trial judge did not repeatedly interject. *Williams*, 689 So. 2d at 396. After admonishing trial counsel, the trial judge encouraged trial counsel to continue examining the potential jurors, and trial counsel asked several more questions without interruption. (Doc. 5-2 at 87–91) Because the trial court would have sustained an objection had the prosecutor raised one and trial counsel could not have objected to the court's admonishment because the court was correct, trial counsel did not deficiently perform by conducting voir dire as directed by the court at sidebar. *Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").

Grace speculates that, if trial counsel had objected, the trial court would have permitted trial counsel to continue to question Juror T. and Juror R. about the lack of evidence of a weapon. (Doc. 1 at 9) He speculates that further questioning would have revealed that Juror T. and Juror R. could not serve as jurors because of bias and an inability to follow the law. (Doc. 1 at 9) Because Grace cannot rely on speculation to demonstrate prejudice under *Strickland*, his claim fails. *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir.

2002) ("'[S]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.'") (citation omitted).

Because Grace fails to demonstrate that the claim has "some merit," he fails to demonstrate prejudice under *Martinez* to excuse the procedural default. Consequently, the claim is procedurally barred on federal review.

Ground Two is **DENIED**.

**Ground Three**

Grace asserts that trial counsel deficiently performed by not objecting to testimony by James Young that constituted hearsay. (Doc. 1 at 11–12) He admits that he did not exhaust his remedies in state court but asserts that *Martinez* permits federal review of the procedurally defaulted claim. (Doc. 1 at 12)

Grace contends that trial counsel should have objected to the following testimony by James on cross-examination (Doc. 5-2 at 179–80) (bolding added):

| [Trial counsel:] | You also stated in a deposition that your wife was shaking so bad, Michelle Young, that she dropped the phone, correct? |
|---|---|
| [James:] | I believe I did, yes, ma'am. |
| [Trial counsel:] | But then previously, before, you said the phone was knocked out of her hand, correct? |
| [James:] | Yes. **After she told me that it was knocked out.** Everything happened so fast. |

Grace contends that trial counsel should have objected to James's testimony concerning his wife's out-of-court statement. (Doc. 1 at 11–12) He contends that he did not commit a burglary with an assault or battery if he did not knock the telephone out of

Michelle's hand and that James improperly vouched for Michelle and bolstered her testimony. (Doc. 1 at 11)

Because trial counsel impeached James with his prior inconsistent statement, trial counsel opened the door to James's explanation for why he made the prior inconsistent statement. "'As an evidentiary principle, the concept of opening the door allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted.'" *Mantecon v. State*, 373 So. 3d 929, 938 (Fla. 1st DCA 2023) (citation omitted). "'To those ends, courts have permitted the introduction of highly prejudicial evidence that, absent a misleading representation, would not have been admissible.'" *Mantecon*, 373 So. 3d at 938 (citation omitted). "The reliability of the otherwise inadmissible evidence should be considered before allowing it in." *Mantecon*, 373 So. 3d at 938.

James admitted that he previously stated both that Michelle dropped the telephone and that the telephone was knocked out of her hand. (Doc. 5-2 at 179–80) At trial, Michelle testified that Grace "smacked" her telephone out of her hand. (Doc. 5-2 at 108) Because trial counsel opened the door to an explanation of why James made the prior inconsistent statement, an objection based on hearsay would not have succeeded. *Broomfield v. State*, 82 So. 3d 1030, 1032 (Fla. 4th DCA 2011). Consequently, trial counsel did not deficiently perform not objecting or not moving to strike James's invited explanation. *Meders*, 911 F.3d at 1354.

Also, the information charged Grace with assaulting and battering both James and Michelle during the burglary. (Doc. 5-2 at 7) James testified that Grace entered the home without permission, brandished the knife, swung the knife in James's face, and threatened

to "cut" him. (Doc. 5-2 at 171–75) Michelle testified that Grace entered the home without permission, brandished the knife, smacked the telephone out of her hand, swung the knife in her face, and threatened her by stating, "[D]on't make me [motherf*cking] kill you." (Doc. 5-2 at 186–90) Even if trial counsel successfully objected to the statement by James, these additional credible threats of imminent harm supported the conviction for burglary with assault or battery. § 784.011(1), Fla. Stat. ("An 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."). Consequently, Grace cannot demonstrate a reasonable probability that the outcome would change if trial counsel had successfully objected. *Strickland*, 466 U.S. at 694.

Because Grace fails to demonstrate that the claim has "some merit," he fails to demonstrate prejudice under *Martinez* to excuse the procedural default. Consequently, the claim is procedurally barred on federal review.

Ground Three is **DENIED**.

**Ground Four**

Grace asserts that trial counsel deficiently performed by not filing a motion to dismiss under Florida's Stand Your Ground law. (Doc. 1 at 13–14) He admits that he did not exhaust his remedies in state court but asserts that *Martinez* permits federal review of the procedurally defaulted claim. (Doc. 1 at 14–15)

Grace contends that at an evidentiary hearing on a motion to dismiss he would prove that he had a right to enter the home because James invited him into the home and that he had a right to brandish the knife because Michelle pushed him without provocation inside

the home. (Doc. 1 at 13–14) He asserts that James's and Michelle's deposition testimony and statements to police support both contentions. (Doc. 1 at 14)

*Snow v. State*, 352 So. 3d 529, 537 (Fla. 1st DCA 2022), summarizes Florida's Stand Your Ground law:

> Florida law "confers immunity from prosecution if an individual uses deadly force in accordance with section 776.012(2), Florida Statutes." *Fletcher*, 273 So. 3d at 1189 (citing § 776.032(1), Fla. Stat.). "Section 776.012(2), allows an individual to use or threaten to use deadly force 'if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.'" *Id.* (quoting § 776.012(2), Fla. Stat.). "An individual has no duty to retreat and 'has the right to stand his or her ground,' but only 'if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.'" *Id.*

"At a hearing to determine whether a defendant is entitled to immunity, the defendant must first present a prima facie claim of immunity, after which the burden of proof shifts to the State to prove by clear and convincing evidence that the defendant is not entitled to immunity." *Morris v. State*, 325 So. 3d 1009, 1011 (Fla. 1st DCA 2021) (citing § 776.032(4), Fla. Stat.).

As explained above, even if James initially invited Grace into the home, James revoked the invitation after Grace brandished the knife and threatened to kill James's dogs. § 810.02(1)(b)(2)(b), Fla. Stat. (2016). *Herron*, 70 So. 3d 705, 707. Also, even if Michelle pushed Grace, Michelle used non-deadly force. Because Michelle's push could not have led Grace to reasonably believe that he faced imminent death or great bodily harm, Grace did not justifiably respond with a threat of deadly force by brandishing the knife. § 776.012(2), Fla. Stat. ("A person is justified in using or threatening to use deadly force if he or she

reasonably believes that using or threatening to use such force is necessary **to prevent imminent death or great bodily harm** to himself or herself or another or to prevent the imminent commission of a forcible felony.") (bolding added). *Huckelby v. State*, 313 So. 3d 861, 866 (Fla. 2d DCA 2021) ("'The trial court must determine whether, based on the circumstances as they appeared to the defendant, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant.'") (citation omitted).

Because Grace did not have a right to remain in the home and did not lawfully respond to Michelle's push by brandishing the knife, a motion to dismiss based on Florida's Stand Your Ground law would not have succeeded. Consequently, trial counsel did not deficiently perform, and Grace cannot demonstrate prejudice under *Strickland*. *Strickland*, 466 U.S. at 694; *Meders*, 911 F.3d at 1354.

Because Grace fails to demonstrate that the claim has "some merit," he fails to demonstrate prejudice under *Martinez* to excuse the procedural default. Consequently, the claim is procedurally barred on federal review.

Ground Four is **DENIED**.

**Ground Five**

Grace asserts that trial counsel deficiently performed by misadvising him about his right to testify. (Doc. 1 at 15–17) He admits that he did not exhaust his remedies in state court but asserts that *Martinez* permits federal review of the procedurally defaulted claim. (Doc. 1 at 17)

In his federal petition, Grace alleges that trial counsel misadvised him to not testify as follows (Doc. 1 at 16):

> Grace avers that he absolutely wanted to take the stand —
> defense counsel advised Grace that she had chosen to pursue a
> defense of lack of identification and conflicts in the evidence to
> demonstrate reasonable doubt.
>
> Grace simply wanted to testify and explain that, as Mr. Young
> had previously stated, he was invited in and had no intent to
> commit an offense. Ms. Young was the provoker, and Grace
> simply took a defensive stance, after being shoved by Ms.
> Young. Grace never took anything from the residence. Grace
> left the residence once told — and once it became apparent by
> the Youngs' demeanor and actions that he was no longer
> welcome.
>
> Defense counsel advised Grace that if he were to testify in the
> manner, albeit truthfully, it would be antagonistic to defense
> counsel's assertion that the State could not prove identity.
> Ironically, both victims had already positively identified Grace
> as the assailant. More ironically, though evidence was
> introduced that the identification was tainted through the
> victim's independent research, no attempt was made by defense
> counsel to suppress the identifications.
>
> Defense counsel's decision to pursue a futile defense deprived
> Grace of his autonomy. Defense counsel's strategy was
> unreasonable, and Grace should have been advised to take the
> stand and testify truthfully. [D]efense counsel never discussed
> Grace's testimony or his right to testify until the trial was at its
> conclusion.

As explained above, because Grace fails to meet his heavy burden under Section

2254(e)(2) to excuse his failure to develop the factual basis of the claim in state court, this

Court "may not conduct an evidentiary hearing or otherwise consider evidence beyond the

state-court record based on ineffective assistance of state post-conviction counsel." *Shinn*,

596 U.S. at 382. Grace must demonstrate deficient performance and prejudice under

*Strickland* based on the state court record. *Shinn*, 596 U.S. at 381–82. Because Grace fails to

demonstrate based on the state court record that trial counsel advised him in the manner

that he contends, his claim fails. *Rogers v. Mays*, 69 F.4th 381, 396 (6th Cir. 2023)

("Generally, petitioners using *Martinez* may not rely on new evidence introduced in federal court. That is because petitioners should bring and develop their claims in state court first. If they do not, they bear the consequences, including strict limits on their ability to introduce new evidence in federal court.") (citing *Shinn*, 596 U.S. at 371–81).

During trial, the trial judge conducted a colloquy with Grace to determine whether he knowingly and voluntarily waived his right to testify (Doc. 5-2 at 222–23):

| [Trial judge:] | All right. Sir, you're still under oath. So, let me pick up where I left off. The issue of whether or not you are going to become a witness and testify in this case is something that I assume you would have discussed with your attorney. Have you done that? |
|---|---|
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | All right. And I don't want to know what you said to each other, but you have discussed the issue? |
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | All right. Has your attorney given you her advice with regard — without telling me what it is, her advice with regard to whether or not she thinks you ought to testify? |
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | Have you considered her advice? |
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | Are you happy with her advice? |
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | All right. Now, do you understand, sir, that regardless of what advice your |

| | attorney gives you, it's your trial and ultimately your choice as to whether or not you wish to become a witness and testify? Did you understand that? |
|---|---|
| [Grace:] | Yes, Your Honor. |
| [Trial judge:] | All right. So, what have you decided you want to do in this case, testify or not? |
| [Grace:] | Not. |
| [Trial judge:] | Not testify? Okay. Very good. |

Because Grace stated under oath that he understood that he had the right to testify, discussed his right to testify with trial counsel, was satisfied with trial counsel's advice, and understood that he could choose to testify even if trial counsel advised against that choice, the colloquy refutes Grace's claim.

Grace alleges that he would have testified that James invited him into the home and that he brandished the knife to defend himself against Michelle's push. (Doc. 1 at 16) He contends that trial counsel advised him not to testify because his testimony would refute the identity defense. (Doc. 1 at 16) As explained above, even if James initially invited Grace into the home, James revoked the invitation after Grace brandished the knife and threatened to kill James's dogs. § 810.02(1)(b)(2)(b), Fla. Stat. (2016). *Herron*, 70 So. 3d 705, 707. Also, Michelle's use of non-deadly force did not authorize Grace to respond with a threat of deadly force by brandishing the knife. § 776.012(1), (2), Fla. Stat. *Huckelby*, 313 So. 3d at 866. If Grace had testified that he entered the home and brandished the knife, he would have both conceded his identity as the burglar and admitted guilt. Consequently, Grace cannot demonstrate deficient performance and prejudice under *Strickland*. *Strickland*, 466 U.S. at 694. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) ("Even if many reasonable

lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.").

Because Grace fails to demonstrate that the claim has "some merit," he fails to demonstrate prejudice under *Martinez* to excuse the procedural default. Consequently, the claim is procedurally barred on federal review.

Ground Five is **DENIED**.

**Ground Six**

Grace asserts that trial counsel deficiently performed by not moving to exclude James Young's and Michelle Young's identification of Grace. (Doc. 1 at 19) He admits that he did not exhaust his remedies in state court but asserts that *Martinez* permits federal review of the procedurally defaulted claim. (Doc. 1 at 19–20)

At trial, James and Michelle testified that they identified Grace in a photographic lineup presented by the detective. (Doc. 5-2 at 177–78, 192–93) The detective, who showed the photographic lineup to James and Michelle, testified that neither identified Grace. (Doc. 5-2 at 252–54)

During the defense case-in-chief, trial counsel called the detective to testify that James and Michelle failed to identify Grace in the photographic lineup. (Doc. 5-2 at 252–54) During closing, trial counsel relied on the conflict in testimony to argue reasonable doubt. (Doc. 5-2 at 269) After closing, the trial court instructed the jury to consider specific factors when evaluating the reliability of a witness's testimony and further instructed that the prosecutor had the burden to prove the crimes beyond a reasonable doubt. (Doc. 5-2 at 291–92) Trial counsel apparently made a reasonable strategic decision by not moving to

suppress the identifications and instead calling the detective to impeach James and Michelle. Trial counsel relied on that impeachment evidence to argue that James and Michelle did not credibly identify Grace. Because Grace fails to demonstrate that no reasonable counsel under these circumstances would have chosen this course of action, his claim fails. *Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Even so, a motion to suppress the identifications would not have succeeded. "'[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside [ ] only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 196–97 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "An identification infected by improper police influence . . . is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012).

*Perry*, 565 U.S. at 232–33, explains that federal due process bars the admission of an identification tainted by a police officer's use of an unnecessarily suggestive procedure:

> Our decisions [ ] turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a line-up, show-up, or photograph array. When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of

> counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

Grace does not assert that the detective used an unnecessarily suggestive procedure when he showed the photographic lineup to James and Michelle. He instead contends that trial counsel should have moved to suppress the identifications because testimony by James and Michelle about their pretrial identification of Grace conflicted with the detective's testimony that neither identified Grace.

Because Grace does not assert that the detective tampered with procedures during the photographic lineup to obtain an unreliable identification, a motion to suppress would not have succeeded, and trial counsel did not deficiently perform. *Perry*, 565 U.S. at 232–33.

Finally, even if trial counsel successfully suppressed the identifications, other evidence proved Grace's identity. James and Michelle testified that the burglar wore a black long-sleeve shirt, black shorts, a black motorcycle helmet, and sandals. (Doc. 5-2 at 166–67, 185) A neighbor, who knew Grace for about ten years, testified that, on the same day and around the same time of the crimes, Grace appeared at his front door wearing the same clothing and same helmet. (Doc. 5-2 at 198–201, 203–05) Grace complained to the neighbor that someone had stolen his four-wheeler. (Doc. 5-2 at 201–02) Grace told the neighbor that he asked a person about the four-wheeler, and the person would not allow Grace to enter the person's backyard. (Doc. 5-2 at 203) The neighbor's identification of Grace and Grace's statements to the neighbor, coupled with James's and Michelle's description of the burglar, proved Grace's identity as the burglar. Consequently, even if a motion to suppress the

29

identifications would have succeeded, Grace cannot demonstrate a reasonable probability that the outcome at trial would change. *Strickland*, 466 U.S. at 694.

Because Grace fails to demonstrate that the claim has "some merit," he fails to demonstrate prejudice under *Martinez* to excuse the procedural default. Consequently, the claim is procedurally barred on federal review.

Ground Six is **DENIED**.

**Ground Seven**

Grace asserts that the cumulative effect of trial counsel's deficient performance demonstrates prejudice and entitles him to relief. (Doc. 1 at 21) Because no series of errors exists to accumulate, the cumulative error claim is meritless. *Morris v. Sec'y, Dep't Corrs.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Ground Seven is **DENIED**.

Accordingly, Grace's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Grace and **CLOSE** this case.

**DENIAL OF CERTIFICATE OF APPEALABILITY AND
LEAVE TO PROCEED *IN FORMA PAUPERIS***

Because Grace neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on February 8, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE